[Civil No. 4307. Filed March 22, 1941.]

[111 Pac. (2d) 628.]

EDNA M. BUTLER, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA, Defendant Insurer, and CITY OF TUCSON, a Municipal Corporation, Defendant Employer, Respondents.

120

Messrs. Bilby & Shoenhair and Mr. Harold C. Warnock, for Petitioner.

Mr. Rouland W. Hill and Mr. Howard A. Twitty, for Respondents.

LOCKWOOD, C. J.—This is before us on *certiorari* from an award of the Industrial Commission, hereinafter called the commission, denying compensation to Edna M. Butler, hereinafter called petitioner. The facts of the case are not in dispute, and may be stated as follows:

Robert E. Butler, hereinafter called deceased, was employed as the city manager of the city of Tucson in the spring of 1931, and held that position continu-

ously until February 17, 1940, when he died as the result of an injury sustained in an accident arising out of and in the course of his duty as such manager. During all of this time his salary was in excess of $2,400 per annum. From November 3, 1925, until the date of his death, the city of Tucson was as a matter of statute insured by the commission against liability under the Workmen's Compensation Law. Sections 56–935, 56–936, 56–941, Arizona Code, 1939. No written policy evidencing the fact of insurance had been issued by the commission, since it correctly took the position that the law itself determined its liability to officers and employees of municipalities.

On May 12, 1932, an auditor of the commission made an audit of the pay rolls of the city of Tucson, from November 3, 1926, to March 31, 1932. This audit showed that prior to the date last mentioned the wages and salaries of certain officials and employees of the city of Tucson, including the salary paid to the city manager, had not been included in the salaries reported to the commission by the city for the purpose of computing the insurance premiums due. The auditor took the position that the salary of the city manager should be included therein and in his audit reported all salaries paid by the city of Tucson to its city manager from February, 1929, the date of the creation of the position of city manager under the charter. The commission adopted the contention of the auditor in so far as it included the salary paid to the city manager, and also certain salaries paid to other city officers receiving in excess of $2,400 per annum, and from then on included such salaries in computing the earned insurance premiums due it. It also insisted that the city of Tucson pay back premiums from February, 1929, on the salaries in excess of $2,400 per annum thus included. The city did pay these pre-

miums and continued to pay them at all times up to the death of deceased and, indeed, awards were made by the commission during this period to at least one of the officers of the city who was drawing a salary in excess of $2,400 per annum. When, however, petitioner made claim for compensation for the death of her husband, the commission took the position that it was without jurisdiction to make an award in favor of any officers of municipalities whose compensation was in excess of $2,400 per annum. The evidence at the hearing showed, without contradiction, that the deceased, relying upon the interpretation made by the commission that he was covered by its insurance, had permitted certain private accident insurance policies, which he had previously held, to lapse, for the reason that in nearly all of his daily activities he was acting in his official capacity as city manager, aforesaid, and believed he was insured against accident by the city's compensation insurance.

There are two questions of law for our determination, first, did the commission have jurisdiction to make an award in favor of the petitioner on the foregoing facts, and second, if it did not, was it estopped from denying that it had such jurisdiction.

The Workmen's Compensation Law of Arizona was enacted in 1925, and was confirmed by section 8 of article XVIII of the Constitution of Arizona, which reads in part:

*"(Workmen's compensation.)*—The legislature shall enact a Workmen's Compensation Law applicable to workmen engaged in manual or mechanical labor in all public employment whether of the state, or any political subdivision or municipality thereof as may be defined by law and in such private employments as the legislature may prescribe by which compensation shall be required to be paid to any such workman, in case of his injury and to his dependents, as defined by law. . . .

"The percentages and amounts of compensation provided in House Bill No. 227 enacted by the seventh legislature of the state of Arizona, shall never be reduced nor any industry included within the provision of said House Bill No. 227 eliminated except by initiated or referred measure as provided by this constitution."

The law appears in the Code of 1939 as chapter 56, article IX, and the parts of the article pertinent to the questions before us are in the following language:

Section 56-928 defines employers who are subject to the provisions of the law:

*"Employers included—Independent contractor.—*The following employers shall be subject to the provisions of this article: The state, and each county, city, town, municipal corporation and school district therein; . . . "

Employees who are affected by it are defined in section 56-929:

*"Employee, workman, and operative.—*The terms 'employee,' 'workman,' and 'operative,' as used herein, mean:

"Every person in the service of the state, and of a county, city, town, municipal corporation, or school district, including the regular members of lawfully constituted police and fire departments of cities and towns, under appointment or contract of hire, except the elective officials and *except officials receiving more than twenty-four hundred dollars ($2,400) per year salary."* (Italics ours.)

Municipal corporations are required to carry insurance in the state compensation fund under section 56-935:

*"Insurance by public institutions.—*The state and each county, city, town, municipal corporation or school district which is liable to its employees for compensation must insure in the state compensation fund. The state auditor, the clerk of the board of supervisors of each county, the clerk of each such political subdivision

and the school superintendent of each county shall furnish quarterly to the commission a true payroll showing the total amount paid to *employees subject to this article* during each month of said quarter, segregated in accordance with the requirements of the commission. Each such clerk and school superintendent shall thereupon prepare and submit to his respective governing body for approval, a claim for the amount of premiums due the commission, and as determined by the commission, for the benefit of the state compensation fund, and such premiums shall be at once paid to the commission by the proper officer. . . . '' (Italics ours.)

It cannot be denied that the city manager of Tucson is not an employee, but an officer of such city, for chapter 5, sections 2 and 3, and chapter 10, section 1, of its charter contain the following provisions:

"Section 2. The appointive officers of the city shall be:

(1) City Manager;"

"Section 3. The City Manager, hereinafter in this Charter designated 'Manager,' shall be appointed by the Mayor and Council and shall hold office until removed by the vote of two-thirds of said Council voting affirmatively therefor."

"Section 1. Subject to the control of the Mayor and Council, the Manager shall have the general supervision and direction of the administrative operation of the City government; . . . " *Winsor* v. *Hunt,* 29 Ariz. 504, 243 Pac. 407.

It will be seen upon comparing these sections of article IX, *supra,* that the deceased was expressly exempted from the definition of employees coming under the term of the act. The premium which was to be paid by the city of Tucson was by law based only upon such employees, and if deceased did not come within the definition of the act as an employee, then the commission had no legal right under its terms to collect any insurance premium from the city based on the salary of deceased. Under these circumstances, did

the commission have the jurisdiction to make an award in favor of petitioner?

■ We have held that the Industrial Commission of Arizona, in making its awards, is acting as a quasi-judicial body of limited jurisdiction. *Alabam's Freight Company* v. *Hunt*, 29 Ariz. 419, 242 Pac. 658. We know of no case holding that such a body can act in excess of the jurisdiction conferred upon it affirmatively by law. Since not only officers, like deceased, of municipal corporations are not specifically included within the class of employees protected by the Compensation Law, but are explicitly and expressly excluded therefrom, we think the commission was clearly without jurisdiction to make any award in favor of petitioner.

■ Indeed, it is not seriously contended by petitioner that deceased fell within the category of officers or employees of municipalities who are covered by the Compensation Law. But it is urged most strenuously that having claimed that he did, and having for many years collected premiums from the city of Tucson based upon the salary of deceased, the commission is estopped from denying that he is protected by the law. Were the commission a private insurance corporation carrying insurance for the city of Tucson and resisting the making or enforcement of an award, it might be argued successfully that because it had chosen to insure the deceased and had elected to collect premiums based upon his salary, it would not now be permitted to deny that the insurance covered him. But we know of no case where it is held that a public body like the commission, acting in its quasi-judicial capacity, has jurisdiction to make an award under acts like our Compensation Law on account of persons who are expressly excluded from the benefit of the act, when a premium has been collected by it on the theory they

were covered, because of the theory of estoppel, and there are many cases which hold expressly that they cannot. *Employers' Liability Assur. Corp.* v. *Industrial Acc. Comm.,* 187 Cal. 615, 203 Pac. 95; *Southern Surety Co.* v. *Inabnit,* 119 Tex. 67, 24 S. W. (2d) 375; *Soars* v. *Soars-Lovelace, Inc.,* (Mo. Sup.) 142 S. W. (2d) 866; *Parker* v. *Travelers' Ins. Co.,* 174 Ga. 525, 163 S. E. 159, 81 A. L. R. 472.

It is not necessary to consider any of the other questions raised in the case. If the commission had no jurisdiction given it by law to make any award in favor of petitioner, and jurisdiction to make such an award cannot be conferred on it by estoppel, it did the only thing legally possible in denying compensation.

█ We appreciate fully the hardship worked upon petitioner by a faulty interpretation of the law on the part of the commission and the city of Tucson, but this court must apply the law as it exists, regardless of the personal feelings of its members.

The award is affirmed.

McALISTER and ROSS, JJ., concur.